### McKINNEY v. MOBILE & O. R. CO.
(5 Div. 940.)

(Supreme Court of Alabama.   Oct. 14, 1926.)

**1. Railroads ⊕═469.**

Contract between railroad and licensee, that all buildings erected on railroad's land by licensee were subject to risk of destruction by fire at licensee's risk, *held* not void or contrary to public policy.

**2. Railroads ⊕═469.**

Where, under lease of railroad property, railroad was not responsible to lessee for loss by fire, that fire did not originate on leased premises but was communicated thereto from contiguous buildings was immaterial.

Appeal from Circuit Court, Chilton County; G. F. Smoot, Judge.

Action by H. C. McKinney against the Mobile & Ohio Railroad Company.  Plaintiff suffers nonsuit and appeals from adverse rulings on pleading.  Affirmed.

Atkinson & Pitts, of Clanton, for appellant.

A contract by a railroad company and a lessee of part of the right of way, which exempts the railroad company from liability for its negligence in destroying property other than that located on the leased premises, is void as against public policy.  A. G. S. R. Co. v. Demoville, 167 Ala. 292, 52 So. 406; 38 Cyc. 1330(E).  The contract provision does not contemplate the loss of property off of the leased premises destroyed by fire not originating on the leased premises.  K. C., Ft. S. & M. R. Co. v. Blaker, 68 Kan. 244, 75 P. 71, 64 L. R. A. 81, 1 Ann. Cas. 883; Thomason v. K. C. So. R. Co., 122 La. 995, 48 So. 437.

Lawrence F. Gerald, of Clanton, and Steiner, Crum & Weil, of Montgomery, for appellee.

A railroad company may by contract exempt itself from liability for burning property on its right of way, although such burning is due to negligence.  Adler & Co. v. Western Ry. of Ala., 192 Ala. 507, 68 So. 361; A. G. S. R. Co. v. Demoville, 167 Ala. 292, 52 So. 406; Hartford F. I. Co. v. C. M. & St. P. R. Co., 175 U. S. 91, 20 S. Ct. 33, 44 L. Ed. 84; New Orleans Great Northern R. Co. v. S. T. Alcus & Co., 159 La. 36, 105 So. 91; Checkley v. Illinois Central R. Co., 257 Ill. 491, 100 N. E. 942, 44 L. R. A. (N. S.) 1127, Ann. Cas. 1914A, 1202; Stephens v. Southern Pac. Co., 109 Cal. 86, 41 P. 783, 29 L. R. A. 751, 50 Am. St. Rep. 17; Griswold v. Illinois Central R. Co., 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647; Greenwich Ins. Co. v. L. & N. R. Co., 112 Ky. 598, 66 S. W. 411, 67 S. W. 16, 56 L. R. A. 477, 99 Am. St. Rep. 313; Osgood v. Cent. Vt. R. Co., 77 Vt. 334, 60 A. 137, 70 L. R. A. 930. Where it leases a portion of its right of way, the company may by contract exempt itself from liability for negligent burning of property of the lessee situated on his premises, which premises are connected with or in close proximity to said leased premises.  Mayfield v. Southern R. Co., 85 S. C. 165, 67 S. E. 132; C. C. & O. R. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S. W. 591; Richmond v. N. Y., N. H. & H. R. Co., 26 R. I. 225, 58 A. 767; German-American Ins. Co. v. Southern R. Co., 77 S. C. 467, 58 S. E. 337, 12 Ann. Cas. 495; M., K. & T. R. Co. v. Carter, 95 Tex. 461, 68 S. W. 159; Mansfield Mut. Ins. Co. v. C., C., C. & St. L. R. Co., 74 Ohio St. 30, 77 N. E. 269, 6 Ann. Cas. 782; Porter v. N. Y., N. H. & H. R. Co., 205 Mass. 590, 91 N. E.

---

⊕═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

875; Rutherford v. Wabash R. Co., 147 Mo. 441, 48 S. W. 921.

GARDNER, J. Plaintiff sued defendant railway to recover damages for destruction by fire of his planing mill and cotton gin situated near said railroad and adjoining the defendant's right of way, alleged to have been caused by sparks negligently emitted from the engine operated on said road. Prior to the destruction of the property, plaintiff had leased from defendant a portion of its right of way for the purpose of erecting a seedhouse thereon, and another portion to be used for "handling lumber." These lease contracts are made exhibits to defendant's pleas, and express a money consideration merely nominal. Omitting others not here necessary to mention, these leases contain the following stipulation:

"(3) That the licensee accepts the privilege hereby granted with full knowledge and understanding that any and all buildings and other property of whatsoever nature and description placed or stored by the licensee, wholly or in part, upon said premises, and any buildings or other property connected therewith, or in such proximity that fire may be communicated therefrom, is subject to the risk of destruction, or damage by fire set out by locomotives operated on the railroad of the railroad company, or may be otherwise damaged or destroyed, or may be stolen, and agrees, in consideration of this privilege, that the privilege is to be used and enjoyed solely at the risk of the licensee, and that the railroad company shall not be responsible to the licensee for any such loss, injury, or damage; the licensee hereby agreeing to indemnify and save harmless the railroad company against liability for any such loss, injury, or damage, whether the same results from the negligence of the railroad company or otherwise."

Defendant relied upon this clause in said contracts as exempting it from liability on account of the destruction of the property by fire, and interposed numerous special pleas setting up such defense, following the language of the contract. To several of these special pleas plaintiff's demurrers were overruled, and defendant's demurrer to plaintiff's special replication that the fire originated on plaintiff's property, which was not on said leased premises, and was not communicated thereto from any building or material on said leased premises, was sustained. From the adverse rulings of the court on the pleadings, plaintiff took a nonsuit and prosecutes this appeal for a review thereof.

[1] That the exemption from liability contained in paragraph 3, above quoted, is sufficiently broad in its scope to embrace damages for the property here sued for, can hardly be seriously questioned. According to the pleading, the property destroyed was located either "wholly or in part upon said leased premises, or connected therewith, or in such close proximity that fire might be communicated therefrom," following substan-tially the language of said third paragraph.

As to the property located upon the leased premises, it is conceded the lease contract would exempt defendant from liability. Such a contract is not void or contrary to public policy. The courts so hold with practical unanimity. A. G. S. R. R. Co. v. Demoville, 167 Ala. 292, 52 So. 406; Adler v. Western Ry., 192 Ala. 507, 68 So. 361; Hartford Ins. Co. v. Chicago, etc., Ry., 175 U. S. 91, 20 S. Ct. 33, 44 L. Ed. 84; Checkley v. Ill. Cent. R. R. Co., 257 Ill. 491, 100 N. E. 942, 44 L. R. A. (N. S.) 1127, and authorities cited in note; Mansfield Mut. Ins. Co. v. Cleveland, etc., R. Co., 74 Ohio St. 30, 77 N. E. 269, 6 Ann. Cas. 782; Thomason v. Kas. City South. Ry. Co., 122 La. 995, 48 So. 432; N. O. Gr. Northern R. Co. v. Alcus & Co., 159 La. 36, 105 So. 91. In upholding the validity of such contracts, the courts point out that in making such a lease the railroad is not in the exercise of duties as a common carrier, but only in a private capacity. Recognizing and discussing this principle, the United States Supreme Court, in Hartford Ins. Co. v. Chicago Ry. Co., supra, used the following language here in point:

"In the case at bar, no one had the right to put a warehouse or other building upon the land of the railroad corporation without its consent; and the corporation was under no obligation to the public, or to the partnership, to permit the latter to do so. In granting and receiving the license from the corporation to the partnership to place and maintain a cold storage warehouse upon a strip of such land by the side of the railroad track, and in erecting the warehouse thereon, both parties knew that its proximity to the track must increase the risk of damages, whether by accident or by negligence, to the warehouse and its contents, by fire set by sparks from the locomotive engines, or by trains or cars running off the track. The principal consideration, expressed in their contract, for the licensee to build and maintain the warehouse on this strip of land, was the stipulation exempting the railroad company from liability to the licensee for any such damages. And the public had no interest in the question which of the parties to the contract should be ultimately responsible for such damages to property placed on the land of the corporation by its consent only."

And the Illinois court in the Checkley Case, supra, reasons the question in the following manner:

"But the lease by appellee of a portion of its right of way for a warehouse does not relate to any of the duties imposed by the law upon appellee as a common carrier. The public is in no way concerned in this transaction, nor is it a matter of public interest whether the loss of the property destroyed by fire shall fall on one party rather than on the other. The situation is entirely different between the loss of this warehouse and its contents and the loss of goods intrusted to a carrier for transportation. In the latter case the public has an interest which is conserved by holding the carrier to a strict accountability for its

negligence or that of its servants, and this for the plain reason that the public is compelled to employ the carrier to transport goods. Any member of the public is liable to require the services of a common carrier, and the carrier is under the legal duty of serving the public indiscriminately. Not so in regard to leasing a part of its right of way for a warehouse or an elevator. While the railroad company has the power to make such lease if it does not interfere with its duties to the public, it is in no sense required to do so. No ·one could compel a railroad company, by mandamus, to lease its right of way for such purposes. It relates to a matter that is entirely within the discretion of the railroad company. In testing the validity of the lease under consideration, the circumstance that one party to it is a railroad corporation and engaged in the service of the public as common carrier is not of controlling importance. Indeed, it is difficult to see that it is of any importance whatever. Page, in his late work on Contracts, in section 368, lays down the rule as follows: 'The rule that a common carrier cannot, by contract, relieve himself of liability for the negligence· of himself or his employees, has no application to provisions in leases given by such carrier for buildings owned by him on or near the right of way, exempting him from liability for loss by fire.' "

We think this same reasoning applies to the plaintiff's property located adjoining the right of way, and either connected with the property on the leased premises, or in such proximity thereto that fire might be communicated therefrom. The courts called upon to decide the question have so held. It was so decided in Mo., etc., Ry. Co. v. Carter, 95 Tex. 461, 68 S. W. 159; Mayfield v. South. Ry. Co., 85 S. C. 165, 67 S. E. 132, and by the Tennessee court in C., C. & O, Ry. v. Lumber Co., 130 Tenn. 354, 170 S. W. 591. Indeed, the conclusion of the whole matter is found in the following from C., C. & O.· Ry. v. Lumber Co.:

"There is no rule of public policy which prevents a railway company from entering into a contract with a property owner, based on a valuable consideration, whereby it shall be exonerated from liability to the property owner for damages caused by fire communicated from its locomotives, even though occasioned by its negligence; provided the agreement contains no provision which in any way involves the relation of the railway company as a common carrier to the other contracting party or the public. Thompson on Negligence (3d Ed.) § 2237."

That case contains many citations and quotations from the authorities as well as a full discussion of the subject here under review. Counsel for appellant cite the case of R. R. v. Blaker, 68 Kan. 244, 75 P. 71, 64 L. R. A. 81, as opposed. That authority was also relied upon by counsel in C. C. & O. Ry. Co. v. Lumber Co., supra, and answered by the court in the following language, which we fully approve:

"A reading of the opinion of the court discloses that the case turned entirely upon the terms and construction of the contract—whether by its terms it covered and included only property on the right of way, or both the property on the right of way and the connected property of Blaker not on the right of way. The question of the validity or invalidity of a contract exemption from liability for destruction of property not on the right of way of the railroad company was not involved in the case, and was not considered in the opinion."

The case of A. G. S. R. R. Co. v. Demoville, supra, cited by appellant, did not involve the question here considered, but turned entirely· upon different considerations. The expression found in the context of a rather lengthy quotation from Elliott on Railroads set out in the opinion in that case, and in no manner connected with the question decided, cannot be construed as an indication of a view of the court. Just such a situation seems to have been presented in the Tennessee court by the use of such quotation in the case of Railroad Co. v. Saulsbury, 115 Tenn. 402, 90 S. W. 624, and was explained in like manner, but in more detail, by that court in C., C. & O. Ry. v. Lumber Co., above noted.

The case of Thomason v. K. C. S. Ry. Co., 122 La. 995, 48 So. 437, rested, as we read and understand the opinion, upon the construction of the language of the contract there under review, and in no manner opposes the principle recognized by the authorities herein cited.

We are supported in this view by the more recent case from the Supreme Court of Louisiana (N. O. Gr. North. R. R. Co. v. Alcus & Co., 159 La. 36, 105 So. 91), where the validity of such exemption is recognized.

The authorities cited by appellant are found therefore as not opposed to the conclusion here reached. Indeed, if there is authority to the contrary (the question being directly presented) it has escaped our notice. We conclude, therefore, that the validity of the provisions of the third paragraph of these lease contracts is supported by the great weight of authority, and sound reasoning as well.

[2] That. the fire did not originate on the leased premises, as alleged in the replication, was immaterial. Reference to the buildings, against which defendant was protecting itself as to liability for damages by fire, was for descriptive purposes only.

To adopt appellant's contention in this regard would be to materially restrict the terms and effect of the contract, unwarranted by the language used or any reasonable interpretation thereof. As said by the court in Mayfield v. South. Ry. Co., supra, and applicable here:

"It would have been difficult to use broader or more comprehensive language. * * * The court cannot insert in the contract restrictive words which the parties saw fit to omit."

The rulings of the trial court were in accord with the views herein expressed, and judgment will accordingly be here affirmed.

Affirmed.

SAYRE, MILLER, and BOULDIN, JJ., concur.