BRYAN, Judge.
 

 Tasha Robinson and Eddie Robinson, the plaintiffs below, appeal from a summary judgment entered in favor of Sovran Acquisition Limited Partnership (“Sov-ran”), Uncle Bob’s Self Storage, Kathy Cruso, and Gary Vandervent, the defendants below. We affirm.
 

 On March 1, 2008, Tasha Robinson entered into a rental agreement with Sovran in which she rented a storage unit at Uncle Bob’s Self Storage, a storage facility owned by Sovran. The rental agreement contained an exculpatory clause,
 
 [1]
 
 which provided, in pertinent part:
 

 
 *393
 
 “ALL PERSONAL PROPERTY IS STORED BY TENANT AT TENANT’S SOLE RISK. INSURANCE IS TENANT’S SOLE RESPONSIBILITY. TENANT UNDERSTANDS THAT OWNER WILL NOT INSURE TENANT’S PERSONAL PROPERTY. Any insurance protecting the personal property stored within the storage space against fire, theft or damage must be provided by the Tenant. Tenant expressly releases Owner from any losses, claims, suits and/or damages or right of subrogation caused by ... theft ... unlawful entry or any other cause whatsoever, nor shall Owner be liable to tenant and/or tenant’s guests for any personal injuries or property damage sustained by tenant and/or tenant’s guests while on or about owner’s premises.”
 

 (Capitalization and bold typeface in original.)
 

 "When the rental agreement was entered into, Vandervent, a Sovran employee, informed Tasha Robinson that the storage facility was protected by surveillance cameras 24 hours a day. The Robinsons subsequently began storing their personal property in the rented storage unit. On approximately July 22, 2008, Sovran began renovating the storage facility. The manager of the storage facility, Andrew Marc Ney, testified that “[t]he surveillance cameras that monitored the storage facility were functioning properly until the time that renovations began on or about July 22, 2008.” On approximately August 13, 2008, someone broke into the Robinsons’ storage unit and stole personal property belonging to them. According to Tasha Robinson, a Sovran employee informed her that the surveillance cameras did not record the break-in “due to renovation.”
 

 The Robinsons subsequently sued Sovran and the other defendants, alleging claims of negligence, wantonness, fraud, deceit, and breach of contract. The Robinsons sought damages for the loss of their personal property that had been stolen from the storage unit while the surveillance cameras were inoperable. As we will discuss in more detail below, the defendants moved for a summary judgment on various grounds, and the trial court entered a summary judgment in their favor on all claims. The Robinsons appealed to the supreme court, and the supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
 

 “In reviewing the disposition of a motion for summary judgment, ‘we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,’
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988), and whether the movant was ‘entitled to a judgment as a matter of law.’
 
 Wright v. Wright,
 
 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 Wright,
 
 654 So.2d at 543 (quoting
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all rea
 
 *394
 
 sonable doubts against the movant.
 
 Wilma Corp. v. Fleming Foods of Alabama, Inc.,
 
 613 So.2d 359 (Ala.1993);
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412, 413 (Ala.1990).”
 

 Hobson v. American Cast Iron Pipe Co.,
 
 690 So.2d 341, 344 (Ala.1997).
 

 In moving for a summary judgment, the defendants asserted that the exculpatory clause in the rental agreement barred the Robinsons’ negligence claim. On appeal, the Robinsons argue that the exculpatory clause does not bar them negligence claim. In making that argument, the Robinsons do not contend that the exculpatory clause is invalid.
 
 See, e.g., Morgan v. South Cent. Bell Tel. Co.,
 
 466 So.2d 107, 116-18 (Ala.1985) (establishing criteria for determining whether an exculpatory clause affects the public interest and is therefore invalid). Rather, the Rob-insons argue that the exculpatory clause cannot be enforced given the facts of the alleged negligence in this case. More specifically, the Robinsons argue that the exculpatory clause does not bar a claim based on the defendants’ “active” negligence, as opposed to “passive” negligence. The Robinsons contend that the defendants committed active negligence because, the Robinsons say, the defendants disabled the surveillance cameras while the storage facility was being renovated. The Robinsons argue that the record on appeal contains substantial evidence of active negligence by the defendants and, therefore, that the exculpatory clause does not bar the negligence claim.
 

 In
 
 Baker v. Wheeler, Lacey & Brown, Inc.,
 
 272 Ala. 101, 128 So.2d 721 (1961), our supreme court construed
 
 Armi v. Huckabee,
 
 266 Ala. 91, 94 So.2d 380 (1957), as having established a rule that an exculpatory clause contained in a residential lease may shield a landlord from liability for passive negligence but not active negligence. Following
 
 Baker,
 
 our appellate courts applied this distinction between active and passive negligence in certain cases concerning exculpatory clauses in residential leases.
 
 See Matthews v. Mountain Lodge Apartments, Inc.,
 
 388 So.2d 935 (Ala.1980);
 
 Walston v. Birdnest Apartments, Inc.,
 
 395 So.2d 45 (Ala.1981); and
 
 Irvin v. Houston,
 
 444 So.2d 878 (Ala.Civ. App.1984). Although no Alabama case has addressed the issue, the distinction between active and passive negligence, at least in the context of exculpatory clauses contained in residential leases, no longer appears relevant given the recent enactment of the Alabama Uniform Residential Landlord and Tenant Act, § 35-9A-101 et seq., Ala.Code 1975 (“the Act”). The Act broadly prohibits and makes unenforceable, in a residential-lease agreement, any provision in which the tenant “agrees to the exculpation or limitation of any liability of the landlord arising under law.” § 35-9A-163(a)(4), Ala.Code 1975;
 
 see also
 
 § 35-9A-163(b), Ala.Code 1975; Comment to § 35-9A-163, Ala.Code 1975 (indicating the need to protect an uninformed tenant who may surrender or waive rights against a landlord for damages arising from a landlord’s negligence); and
 
 Fuentes v. Owen,
 
 310 So.2d 458, 459 n. 1 (Fla.Dist.Ct.App.1975) (stating that, under a Florida statute containing similar language as that found in § 35-9A-163(a)(4), an exculpatory clause would not shield a residential landlord from liability for negligence).
 

 The Robinsons argue that the active/passive dichotomy articulated in
 
 Baker
 
 should be applied in this case to prevent the enforcement of the exculpatory clause as to their negligence claim. However, the cases relied on by the Robinsons concern the specific context of exculpatory clauses in residential leases entered into before the adoption of the Act in 2007. Of course, unlike
 
 Baker
 
 and subsequent cases relying
 
 *395
 
 on
 
 Baker,
 
 this case does not involve a residential lease; rather, it involves the rental of a self-storage unit. As noted, in the context of residential leases, the distinction between active and passive negligence no longer appears relevant given the adoption of the Act; the Robinsons now ask us to revive that distinction and to apply it in a new context. We decline to apply to this case the distinction between active and passive negligence found in
 
 Baker.
 
 In doing so, we note that making distinctions between active and passive negligence in determining whether to uphold an exculpatory clause has been criticized as “somewhat artificial and arbitrary.”
 
 College Mobile Home Park & Sales, Inc. v. Hoffmann,
 
 72 Wis.2d 514, 520, 241 N.W.2d 174, 177 (1976).
 
 See also
 
 Edward C. Fisch, Note,
 
 Exculpatory Clauses in Standard Form Leases: A Need for Direct Judicial Action,
 
 28 U. Pitt. L.Rev. 85, 87 (1966) (noting that some courts “make the dubious distinction between active and passive negligence” in determining whether to uphold an exculpatory clause). Because we conclude that any distinction between active and passive negligence is inapplicable in this case, the Robinsons’ argument that the exculpatory clause does not bar their negligence claim fails. Therefore, the Robinsons have not established that the trial court erred in entering a summary judgment on their negligence claim.
 

 Next, the Robinsons argue that the trial court erred in entering a summary judgment on their wantonness claim.
 
 [2]
 
 Our supreme court has defined “wantonness” “ ‘as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.’ ”
 
 Bozeman v. Central Bank of the South,
 
 646 So.2d 601, 603 (Ala.1994) (quoting
 
 Stone v. Southland Nat’l Ins. Corp.,
 
 589 So.2d 1289, 1292 (Ala.1991)). The Robin-sons do not cite any evidence indicating that the defendants acted with the requisite consciousness that the Robinsons’ personal property was likely to be stolen or would probably be stolen merely because the security cameras had become inoperable. Accordingly, the Robinsons have not established that the trial court erred in entering a summary judgment on their wantonness claim.
 
 See, e.g., Ex parte Essary,
 
 992 So.2d 5, 12 (Ala.2007) (equating wantonness to “reckless indifference to a known danger likely to inflict injury”).
 

 Next, the Robinsons argue that the trial court erred in entering a summary judgment on the their claims alleging fraud and deceit. In their complaint, the Robinsons made the following allegations regarding those claims:
 

 “4. [On March 1, 2008, when] the parties negotiated the [rental] agreement, the Defendants represented to the [Robinsons], or one of them, that [the storage facility was] secure and protected by continuous surveillance by means of video cameras owned and/or maintained by the Defendants.
 

 “5. Further, at the time of the negotiation ..., the [Robinsons] inspected the [storage facility,] which [the Robin-sons] were considering for the storage of their personalty. At said time and in said place, the [Robinsons] observed surveillance cameras situated upon said premises.
 

 
 *396
 
 “6. The representations made by the Defendants were false and the Defendants knew that they were false or said representations were made recklessly and|7]or negligently but with the intent that the [Robinsons] rely upon them.
 

 “7. The [Robinsons] reasonably relied upon the representations made by the Defendants and entered into [the rental] agreement^] and [the Robinsons] stored valuable personalty [in the rented storage unit].
 

 “8. In fact, on and for some time prior to August 12 or 13[,] 2008, said surveillance cameras were inoperable or not functioning properly. As a result, third persons were allowed to enter upon said premises without [being] subjected to surveillance or being detected. While upon said premises[,] ... said third parties took possession of [the Robinsons’] personalty[,] permanently depriving [them] thereof.
 

 “9. Further, the defendants had a duty to inform the [Robinsons] that said surveillance cameras were inoperable or not functioning properly so that [the Robinsons] could make other arrangements for their storage of said personalty-
 

 “10. As a result of the Defendants[’] fraudulent misrepresentations, deceit and failure to advise the [Robinsons] of the true facts, the [Robinsons] suffered the loss of their personal property and suffered mental anguish.”
 

 The Robinsons contend that their complaint stated claims alleging both fraud and deceit. The elements of fraud are:
 

 “(1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation.
 
 Earnest v. Pritchett-Moore, Inc.,
 
 401 So.2d 752 (Ala.1981). If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant’s intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive.
 
 Clanton v. Bains Oil Co.,
 
 417 So.2d 149 (Ala.1982).”
 

 Coastal Concrete Co. v. Patterson,
 
 503 So.2d 824, 826 (Ala.1987).
 
 See also
 
 § 6-5-101, Ala.Code 1975 (stating the elements of fraud). “In promissory fraud, the material existing fact that is misrepresented is the defendant’s state of mind, when the defendant represents that he intends to perform some act although he does not in fact intend to perform it.”
 
 Spring Hill Lighting & Supply Co. v. Square D Co.,
 
 662 So.2d 1141, 1149 (Ala.1995).
 

 The Robinsons’ complaint may be read as alleging that, when the rental agreement was signed in March 2008, the defendants misrepresented that the storage facility was then protected by surveillance cameras. However, as the defendants argued in the trial court, the record contains no evidence establishing that the storage facility was not protected by surveillance cameras when the rental agreement was entered into. Conversely, the manager of the storage facility, Ney, testified that the surveillance cameras “were functioning properly” before renovations to the storage facility began in July 2008. Also, Tasha Robinson testified that, on the day she signed the rental agreement, she observed a video monitor indicating that the surveillance camera monitoring the entrance to the storage facility was functioning. Insofar as the fraud claim alleged that the defendants misrepresented that the surveillance cameras were functioning when the rental agreement was entered into, that claim fails because there is no evidence indicating that the defendants made a false representation concerning that existing fact.
 
 See, e.g., Singleton v. Protec
 
 
 *397
 

 tive Life Ins. Co.,
 
 857 So.2d 803, 814 (Ala.2003).
 

 The Robinsons’ complaint alleged that the defendants represented that the storage facility would be “protected by continuous surveillance.” Insofar as the Robin-sons’ fraud claim is based on an alleged promise to maintain the surveillance cameras, the complaint appears to have alleged a promissory-fraud claim. To establish promissory fraud, the Robinsons were required to establish, among other things, that the defendants did not intend, when the rental agreement was entered into, to continue to use surveillance cameras at the storage facility.
 
 See Coastal Concrete Co.,
 
 503 So.2d at 826. However, the Robinsons presented no evidence indicating that the defendants, when the rental agreement was entered into, intended not to use surveillance cameras in the future. Therefore, the Robinsons’ promissory-fraud claim fails.
 

 The Robinsons also argue that the trial court erred in entering a summary judgment on their deceit claim, made pursuant to § 6-5-104, Ala.Code 1975. That section, entitled “Deceit — Fraudulent deceit,” provides, in pertinent part:
 

 “(a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.
 

 “(b) A deceit within the meaning of this section is ...:
 

 [[Image here]]
 

 “(3) The suppression of a fact by one who is bound to disclose it....”
 

 It appears that the Robinsons contend that the defendants are liable for deceit under § 6 — 5—104(b)(3) because, the Robin-sons say, the defendants failed to notify them that the surveillance cameras were not functioning during the renovation of the storage facility. Before the trial court, the defendants asserted that they owed no duty to inform the Robinsons that the surveillance cameras were inoperable during the renovation of the storage facility. The Robinsons contend that the question whether the defendants owed the Robin-sons such a duty is a jury question. However, whether the defendants owed the Robinsons a duty to inform them that the surveillance cameras were inoperable is a question of law to be determined by the trial court.
 
 State Farm Fire & Cas. Co. v. Owen,
 
 729 So.2d 834, 840 (Ala.1998) (“The judge should decide whether, assuming as truth all of the plaintiffs factual assertions, they are sufficient to give rise to a legal duty.”).
 
 See also Flying J Fish Farm v. Peoples Bank of Greensboro,
 
 12 So.3d 1185, 1192 (Ala.2008).
 

 In arguing that the defendants owed them a duty to inform them that the surveillance cameras had become inoperable, the Robinsons cite general principles regarding the suppression of material facts. However, the Robinsons do not explain how those general principles relate to the facts of this case to create a duty owed by the defendants with regard to the deceit claim. The Robinsons do not cite authority establishing that the defendants owed them a duty to disclose under the specific facts of this case. An appellate court does not “create legal arguments for a party based on undelineated general propositions unsupported by authority or argument.”
 
 Spradlin v. Spradlin,
 
 601 So.2d 76, 79 (Ala.1992). Therefore, we conclude that the Robinsons have not established that the trial court erred in entering a summary judgment on their deceit claim.
 
 [3]
 

 In a single sentence in their brief, the Robinsons summarily contend
 
 *398
 
 that the trial court erred in entering a summary judgment on their breach-of-contract claim.
 

 ‘“When an appellant fails to properly argue an issue, that issue is waived and will not be considered.
 
 Boshell v. Keith,
 
 418 So.2d 89 (Ala.1982).’ Asciro
 
 v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ. App.1996). ‘An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless
 
 presented and argued
 
 in brief.
 
 Ex parte Riley,
 
 464 So.2d 92 (Ala.1985).’
 
 Braxton v. Stewart,
 
 539 So.2d 284, 286 (Ala.Civ. App.1988).”
 

 Tucker v. Cullman-Jefferson Counties Gas Dist.,
 
 864 So.2d 317, 319 (Ala.2003). Therefore, we do not consider that issue further.
 

 In conclusion, the Robinsons have not established that the trial court erred in entering a summary judgment in favor of the defendants on the Robinsons’ claims.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . “An exculpatory clause 'reliev[es] a party from liability resulting from a negligent or wrongful act.’
 
 Black's Law Dictionary
 
 608
 
 *393
 
 (8th ed.2004).”
 
 Fox Alarm Co. v. Wadsworth,
 
 913 So.2d 1070, 1076 (Ala.2005).
 

 [2]
 

 . The defendants do not argue that the exculpatory clause bars the wantonness claim.
 
 See Barnes v. Birmingham Int’l Raceway, Inc.,
 
 551 So.2d 929, 933 (Ala. 1989) (stating that the exculpatory clause in that case, although valid as to negligent conduct, was invalid as to wanton or willful conduct).
 

 [3]
 

 . Insofar as the Robinsons’ brief may be read as arguing that they alleged, in addition to the deceit claim, a fraudulent-suppression claim under § 6-5-102, Ala.Code 1975, our discus
 
 *398
 
 sion regarding duty equally applies.
 
 See
 
 § 6-5-102 (stating that a duty to disclose material facts is an element of fraudulent suppression).